_____

No. 95-1766WM
_____

Edward J. Miller,                     *
                                      *
         Appellee,                    *
                                      *  On Appeal from the United
                                      *  States District Court
      v.                              *  for the Western District
                                      *  of Missouri.
Dr. Robert Schoenen and               *
Dr. David White,                      *
                                      *
         Appellants.                  *


                    _____

          Submitted:  November 17, 1995

             Filed:  February 15, 1996
                    _____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit
     Judge, and FAGG, Circuit Judge.
                    _____

RICHARD S. ARNOLD, Chief Judge.


     Edward Miller is an inmate at the Jefferson City Correctional Center in Missouri.  In this lawsuit, brought under 42 U.S.C. § 1983 (1988), he alleges that the defendants deprived him of the care he required as a heart-transplant patient.  This deprivation, in turn, it is said, deprived him of his Eighth Amendment right to be free from cruel and unusual punishment.  The District Court,[1]

_____

[1]The Hon. Scott O. Wright, United States District Judge for the Western District of Missouri.

adopting the report and recommendation of a Magistrate Judge,[2] held that Miller's evidence was sufficient to survive a summary-judgment motion, and that the defendants were not shielded from his claim by qualified immunity.  The defendants now appeal that order.  We lack jurisdiction to hear a portion of the appeal, and dismiss as to that portion.  To the extent that we do have jurisdiction, we affirm the order of the District Court.

I.

Edward Miller received a heart transplant in 1985.  In 1989, he began serving a lengthy sentence at the Jefferson City Correction Center (JCCC), a part of the Missouri Prison System. The defendants are doctors in charge of caring for the medical needs of inmates at the JCCC.  Miller asserts that they were directly in charge of his care for all or part of the period from his initial incarceration until the present.

Miller alleges that, as a heart-transplant patient, he requires specialized care from the time of the transplant operation onward.  Specifically, Miller identifies, through his expert medical witness Dr. Alan Forker, six types of specialized care required by all heart-transplant patients.  They are daily administration of immunosuppressive drugs, the frequent taking of cyclosporine blood levels, immediate attention to infections, frequent monitoring by blood samples of the patient's white count, repeated myocardial biopsies as often as every three to four months, and annual cardiac catheterization and coronary arteriography.  Miller alleges that the defendants, while knowing of his need for this care, did not administer regular immunosuppresives, myocardial biopsies, and catheterization; repair broken wires in his sternum or treat the resulting pain; surgically

_____

[2]The Hon. William A. Knox, United States Magistrate Judge for the Western District of Missouri.

-2-

treat his chronic mastoiditis; or return Miller to the University of Missouri Hospital for treatment following his March 1993 carotid endarterectomy surgery, remove sutures from the resulting incision, or treat an infection in the incision.

The defendants moved for summary judgment in the District Court. They argued that they were entitled to summary judgment because Miller had not produced evidence from which a jury could conclude that he was deprived of the necessary care, or that, if he was, the defendants were responsible for that deprivation. They also argued that Miller was not damaged by any deprivation that might have occurred because he had not rejected his donor heart during the nine years since his transplant operation. In addition, the defendants argued that they were shielded from liability by qualified immunity. The District Court rejected these arguments, holding that the adequacy of the treatment Miller received, and whether any inadequate treatment damaged Miller, depended on "whose version of the facts is believed."

## II.

We must first address the issue of our jurisdiction over this appeal. Ordinarily, we have no jurisdiction of an appeal challenging the denial of a motion for summary judgment. Johnson v. Jones, 115 S. Ct. 2151, 2154-55 (1995). Such orders are not final orders in the traditional sense. Ibid.; 28 U.S.C. § 1291 (1993). One exception to this rule occurs when a summary-judgment order denies a motion based on qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Reece v. Groose, 60 F.3d 487, 489 (8th Cir. 1995). Qualified immunity shields state actors from liability in civil lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Reece, 60 F.3d at 491 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As we discussed in Reece, however, the qualified-immunity question

-3-

involves more than merely determining whether the law governing a plaintiff's claim is "clearly established."  We must examine the information possessed by the government official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law.  Id. at 489; Anderson v. Creighton, 483 U.S. 635, 640 (1987).

That some issues must be reviewed in a qualified-immunity appeal does not mean that we have jurisdiction to review all of the points addressed in the summary-judgment motion.  Only those issues that concern what the official knew at the time the alleged deprivation occurred are properly reviewed in this type of interlocutory appeal.  We have jurisdiction to review those issues because their review is necessary in order to determine whether a reasonable state actor would have known that his actions, in light of those facts, would violate the law.

By way of example, whether an inmate has alleged sufficient facts to allow a jury to conclude that the inmate faces a risk of assault from other inmates, prison officials know of the risk, and the reasonableness of their actions in light of a known risk are all reviewable in an appeal of a denial of qualified immunity at the summary-judgment stage.  Reece, 60 F.3d at 490.  That much is so because prison officials must protect inmates from violence at the hands of other inmates, if they are aware of a substantial risk that such violence will occur.  See Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).  That is the "clearly established" law. Examination of the facts known to the prison officials is necessary in order to determine whether a reasonable official would have known that his failure to take some particular action to protect the inmate would violate that law.

On the other hand, if police officers who are accused of violating a plaintiff's rights by using excessive force when they

-4-

arrested him move for summary judgment on the ground that they were not involved in the incident, we may not review that portion of the appeal as part of an appeal of a denial of qualified immunity. See Johnson, 115 S. Ct. at 2156. We have no jurisdiction over that portion of an appeal because whether the officers were actually involved is a factual question that does nothing to inform us about whether, given the facts known at the time, reasonable officers would have known that the level of force they employed was excessive. Such orders "determine[] only . . . question[s] of `evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial." Ibid.

We are thus left with the following distinction. The question of what was known to a person who might be shielded by qualified immunity is reviewable, to determine if the known facts would inform a reasonable actor that his actions violate an established legal standard -- the right to speak freely, the right to be free from unreasonable searches and seizures, a prisoner's right to adequate medical care, for example. Conversely, if the issues relate to whether the actor actually committed the act of which he is accused, or damages, or causation, or other similar matters that the plaintiff must prove, we have no jurisdiction to review them in an interlocutory appeal of a denial of a summary-judgment motion based on qualified immunity.

Applying these principles to the case before us, we hold that we lack jurisdiction over much of the defendants' appeal. Initially, the defendants argue that Miller has failed to identify evidence that these defendants were the doctors who actually deprived Miller of adequate care. This argument is no different from the one rejected by the Supreme Court in Johnson v. Jones. In Johnson the officers said that, even if the plaintiff had been subjected to excessive force, they did not do it. Id. at 2153. Here, the defendants are saying that, according to the evidence Miller has produced, if Miller's right to adequate medical care was

abridged, someone else did it.  The Supreme Court held that no jurisdiction existed in Johnson, id. at 2156, and we must do the same here.

The defendants also argue that Miller has failed to put forth "verifying medical evidence" of a severe deprivation of medical care, as required by Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995).  We held in Reece, however, that the Supreme Court's opinion in Johnson v. Jones overturned that portion of Beyerbach that held that we have jurisdiction to hear such an argument.  Reece, 60 F.3d at 492.  Whether there is verifying medical evidence that Miller failed to receive the treatment he desired, and, if he did not, whether there is verifying medical evidence that the failure to treat him was sufficiently serious, are questions beyond our jurisdiction in this interlocutory appeal.

We do, however, have jurisdiction to hear a portion of the defendants' appeal.  Miller asserts that the defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care.  In order to succeed, he must show that he had an objectively serious medical need, Estelle v. Gamble, 429 U.S. 97, 105 (1976), and that the defendants knew of and disregarded that need, Farmer, 114 S. Ct. at 1979.  Facts relating to the subjective component of the claim, unlike facts relating to the objective component of the claim, would inform a reasonable prison official whether his actions violated the Eighth Amendment's mandate that the State "provide medical care for those whom it is punishing by incarceration."  Estelle, 429 U.S. at 103.  We thus have jurisdiction to review whether sufficient evidence exists that the defendants actually knew of Miller's need for specialized care and acted reasonably in light of that knowledge, the subjective component of the claim.

-6-

Summary judgment is appropriate when there is no genuine issue of material fact that would allow a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). In order to survive summary judgment in this case, Miller must point to evidence, admissible at trial, that would allow a reasonable jury to conclude that he had a particular medical need, and the defendants knew of this need. Fed. R. Civ. P. 56(c). The defendants may show that they acted without deliberate indifference in light of their knowledge of Miller's condition. Farmer, 114 S. Ct. at 1983. Those are the "material facts" in this appeal because they are the facts relevant to the defendants' qualified-immunity defense.

There is ample evidence that Miller needed the care he claims was denied. Dr. Forker testified that, in his expert opinion, all heart-transplant patients, including Miller, have the six definite treatment needs we have described. Dr. Forker's assessment is similar to the care prescribed in medical reports from Callaway County Hospital, where Miller received his initial medical evaluation after being incarcerated, and the University of Missouri Medical Center, where Miller received follow-up treatment during his incarceration. This evidence is certainly enough to allow the jury to conclude that Miller needed specialized care.

The defendants place great emphasis on certain statements in Miller's expert's testimony to attempt to rebut this evidence. Testimony by Dr. Forker indicates that the benefit of some treatments, namely myocardial biopsies, can, over time, decrease so much that they are outweighed by the risk. Because Miller was, at that time, nine years removed from his surgery, that point has arguably been reached. They also note that one treatise on which Dr. Forker relied did not state with specificity how often this treatment should be given.

That some of Miller's treatment should decrease or change at some point is not the dispositive question. Rather, the question is whether the defendants provided Miller with the care he needed at the time he needed it. Miller alleges inadequacies in his care from the beginning of his incarceration on. At that time, he was not a long-term transplant patient. Moreover, even if the frequency of some treatment should change, or varies to some degree from what Dr. Forker asserts is necessary, the defendants have introduced no evidence as to how much or when. It would be mere speculation on our part to conclude that Miller's care needs had reached a point where the care identified by his records and his expert was unnecessary. These arguments must be supported by proof and presented to the jury.

Likewise, evidence exists that would allow a jury to conclude that the defendants knew of these needs. The records to which we just referred were in Miller's file, and a jury could infer that the defendants, who were allegedly in charge of Miller's care, were familiar with them. See Reece, 60 F.3d at 491. Miller also points to an interoffice communication of February 6, 1990, in which defendant Schoenen admits that Miller "[h]as had a heart transplant and takes medication which reduces immunity to infection." He recommends "extremely light duty." A jury could infer that this communication is an acknowledgment by one of the defendants of Miller's special and precarious medical condition. Finally, Miller notes documents in his file that expressly designate Dr. Schoenen as the physician in charge of carrying out Miller's follow-up treatment.

The defendants do not argue that they performed alternative treatments that were reasonable under the circumstances. Instead they assert principally that, because Miller has not rejected his heart and is still alive, their treatment must have been adequate. We suppose that a jury could so conclude. It could also conclude,

on the other hand, that Miller has survived in spite of the defendants' inadequate treatment. That decision is for the jury, not for this Court in an interlocutory appeal.

The defendants also stress that Dr. Forker was unable to state that either Dr. Schoenen or Dr. White had failed to provide adequate care to Miller. That much is true, but it is not the end of Dr. Forker's testimony. While he could not identify these defendants as being the doctors responsible for the inadequacies in Miller's care, he did unequivocally state that the care was inadequate, and that some doctor was responsible. As we have pointed out previously, we have no jurisdiction to review whether these doctors were the culprits. It is enough, at this stage, that Miller has produced enough evidence to allow a reasonable jury to conclude that he had particular needs and that these defendants (assuming for present purposes that they were the responsible physicians) did nothing about them.

Miller has pointed out that there is no record of his receiving the care Dr. Forker and the outside hospitals where he received treatment say he needs. Records from Miller's outside physicians express concern over inadequacies in Miller's care. These records, and the lack of records indicating that any care was given, are the bases for Dr. Forker's conclusion that Miller's care was inadequate. A reasonable jury could, even if the defendants have expert testimony that Miller's survival indicates reasonable care, conclude that Miller's care was inadequate based on this evidence.

Moreover, Miller points to specific incidents, involving infections that went untreated, where his medical needs were ignored. What he describes as a chronic ear infection was never

treated.[3]  Following surgery in 1993, he asserts, the area around his incision became infected.  Several months passed before this infection was treated.  One record actually indicates that this infection progressed to the point of swelling up and bursting before any action was taken.

Miller has produced adequate proof to allow a reasonable jury to conclude that he had serious medical needs, and that the defendants knew of those needs.  Whether the defendants acted with deliberate indifference to Miller's needs is a question of fact, not clear one way or the other on this record.  Thus, they are not entitled to qualified immunity.

IV.

To the extent that we have jurisdiction to hear the defendants' appeal, the order of the District Court is affirmed. The remainder of the defendants' appeal is dismissed for want of jurisdiction.  Miller's motion for sanctions and double fees under Rule 38 of the Federal Rules of Appellate Procedure is denied.  We thank Miller's appointed counsel for her services and commend her for her diligence.

It is so ordered.

A true copy.

        Attest:

                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The defendants claim that Miller never had an ear infection. Whether he did or not is a question of fact for the jury.