# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-4007

_____

| | | |
|---|---|---|
| Patricia Mueller, Paul Mueller, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Douglas Tinkham and Michael Hanlen, | * | |
| | * | |
| | * | |
| Appellants. | * | |
| | * | |
| | * | |
| | * | |

_____

Submitted: May 11, 1998
Filed: December 16, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Patricia and Paul Mueller brought this 42 U.S.C. § 1983 action asserting that the appellants violated the Muellers' civil rights by applying for and executing a search warrant on the Muellers' home without probable cause, and conspiring to violate their civil rights. The appellants, Detective Douglas Tinkham and his supervisor, Detective Sergeant Michael Hanlen, both employed by the City of O'Fallon, Missouri, sought

summary judgment on the basis of qualified immunity. The district court[1] denied their motions for summary judgment, and the officers now appeal.

## I.

The Muellers reside at #40 Country Lane Court in St. Charles County, Missouri. On April 30, 1996, at approximately 9:30 p.m., the St. Charles County Tactical Response Team forcibly entered the Muellers' home and restrained the Muellers at gunpoint. Detectives Tinkham and Hanlen then entered the home and searched the residence for over an hour looking for illegal firearms and evidence of the sale of illegal firearms.

The search of the Muellers' residence was the result of an investigation begun in April 1996, when Special Agent Ray Fragoso of the Federal Bureau of Alcohol, Tobacco & Firearms and Detective Tinkham of the police department for the City of O'Fallon, Missouri, began a joint investigation regarding the sale of illegal firearms in St. Charles County. During the course of this investigation, Tinkham and Fragoso met with an informant, Matthew Hoppe, who provided them with information in an attempt to gain leniency for state charges he was facing. Hoppe informed the officers that a man named Terry Vaught resided at #40 Country Lane Court and was selling illegal firearms from the residence. Hoppe said he had obtained an illegal firearm from Vaught and would show it to the officers, but he never produced the weapon despite several requests from the detectives to do so. Tinkham, Fragoso, and Hanlen then searched Hoppe's residence, but they did not find the illegal weapon Hoppe had told them about. During the search, Hoppe's mother arrived and told the officers her son is a manic depressive and a pathological liar, so they should not believe anything he

---

[1]The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri, trying the case by consent of the parties pursuant to 28 U.S.C. § 636(c).

said. Hoppe admitted to the officers that he had lied about the gun. The officers then forcibly took Hoppe back to the police station and instructed him to write out his previous statement. In this written statement, Hoppe attested that he knew Terry Vaught and that Terry Vaught was selling illegal firearms from his residence at #40 Country Lane Court.

Detective Tinkham applied for and obtained a search warrant for #40 Country Lane Court to search for illegal firearms, supported by Hoppe's affidavit and Tinkham's own assertion that Hoppe was an informant whose information had proved reliable in the past. Hoppe denies ever having given information in the past. Sergeant Hanlen reviewed and approved the search warrant materials prior to their submission to the state court.

After obtaining the warrant but prior to its execution, the officers learned that Vaught was actually residing at a location in Portage DeSioux, Missouri, and not at #40 Country Lane Court. They also learned that the utilities at #40 Country Lane Court were in the name of the Muellers. The only information given by Hoppe relevant to this particular residence that the officers were able to independently verify was Hoppe's description of the outside front of the residence, which was visible from the street. The officers executed the warrant at approximately 9:30 p.m. First, a ten-member team forcibly entered #40 Country Lane Court, restrained the Muellers, and secured the premises to avert the threat of illegal firearms. Thereafter, Tinkham, Hanlen, and Fragoso entered the residence and searched it for over an hour before they left with no evidence and no sign of Vaught.

The Muellers brought this civil rights suit, alleging that Tinkham, Hanlen, and Fragoso violated their Fourth Amendment rights by applying for and executing the warrant, and that they engaged in a conspiracy to violate the Muellers' civil rights. The three officers moved for summary judgment, but the district court denied their motions, finding that material disputes of fact existed as to whether they acted in an objectively

3

reasonable manner. All three defendants appealed, but Special Agent Fragoso subsequently withdrew his appeal, leaving only the appeals of Tinkham and Hanlen before this court.

## II.

"We review a denial of summary judgment de novo, applying the same standard that governed the district court's decision." Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998). This standard requires us to view the evidence in the light most favorable to the nonmoving party and to accept as true the nonmoving party's statement of the facts. Guite v. Wright, 147 F.3d 747, 749 (8th Cir. 1998). We have jurisdiction to review the denial of summary judgment based on qualified immunity, but that jurisdiction is limited to abstract issues of law and does not extend to arguments concerning the sufficiency of the evidence. Collins, 153 F.3d at 595 (citing Behrens v. Pelletier, 516 U.S. 299, 313 (1996)). However, public officials are permitted to claim on appeal that their actions were objectively reasonable in light of their knowledge at the time of the incident. Id. We affirm the denial of summary judgment based on qualified immunity if there exists a genuine issue of material fact or the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Detectives Tinkham and Hanlen claim that the district court erred by denying summary judgment on the basis of qualified immunity. When state officials are sued for violating a clearly established federal right, the doctrine of qualified immunity shields them from personal liability if a reasonable official in their position would not have known that his actions violated a clearly established right. See Walden v. Carmack, 156 F.3d 861, 868-69 (8th Cir. 1998). In other words, "[t]he qualified immunity doctrine shields state actors from personal liability where their actions, though unlawful, are nevertheless objectively reasonable in light of the clearly

established law at the time of the events in question."  Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998) (citing Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)).

Clearly established Fourth Amendment law requires a warrant application to contain a truthful factual showing of probable cause--"truthful in the sense that the information put forth is 'believed or appropriately accepted by the affiant as true.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)).  To preclude a grant of qualified immunity, a "warrant application [must be] so lacking in indicia of probable cause as to render official belief in its existence unreasonable." George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir. 1994) (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986)).  For purposes of qualified immunity, "[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause." Thompson v. Reuting, 968 F.2d 756, 760 (8th Cir. 1992).

Detective Tinkham and Sergeant Hanlen claim that they had an objectively reasonable belief that Hoppe's affidavit established probable cause to support issuance of the search warrant.  Hoppe's statement was the sole basis for the search warrant application.  When a search warrant affiant relies on the statement of an informant, the reliability of that informant is a key issue.  Walden, 156 F.3d at 870.  The information provided by an informant is sufficient to support a probable cause finding if the person has provided reliable information in the past or if the information has been independently corroborated.  Id.

The district court aptly observed that "the facts concerning the reasonableness of [the officers'] application for the search warrant are vastly disputed."  (Appellants' Adden. at 8.)  Detective Tinkham attested that Hoppe had provided reliable information in the past, but Hoppe says he had never before provided any information.  Contrary to Tinkham's assertion that Hoppe was reliable, the officers had knowledge and reason

5

to believe that Hoppe was not truthful. Hoppe admitted lying to the officers about his ability to produce an illegal firearm which he said he obtained from Vaught. Also, Hoppe's own mother told them that Hoppe was untruthful--in fact, a pathological liar. This information was not included in the search warrant materials, and it raises a genuine question about whether Tinkham and Hanlen reasonably believed that Hoppe's statement supplied probable cause to support the warrant.

Tinkham and Hanlen contend that Hoppe's statement was reliable because they independently verified his description of the outside of the residence (a description available to anyone who drove by the residence), he made self-incriminating admissions in his statement, he provided detailed firsthand observations, and Tinkham interviewed Hoppe personally. Such factors are important in determining the reliability of an informant. See United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996) (noting personal contact with an informant can strengthen an officer's decision to rely on the information provided and statements against penal interest carry considerable weight). However, because the officers knew of the conflicting information concerning Hoppe's truthfulness, there remains a question of whether they acted in an objectively reasonable manner regarding their application for the search warrant, and they have thus failed to prove that they are entitled to qualified immunity on this claim.

Tinkham and Hanlen also argue that they are entitled to qualified immunity for their conduct in executing the search warrant. They assert that their conduct was not unreasonable--they did not take part in the forcible entry to the home, they did not physically restrain the Muellers, they caused no damage to the house, and Hanlen was justified in searching the Muellers' computer for records of illegal firearm sales. The district court concluded that Tinkham and Hanlen are not entitled to qualified immunity for their conduct in executing the search warrant, because genuine issues of material fact existed concerning whether Tinkham and Hanlen were reasonable in their belief that the search warrant was supported by probable cause.

6

The actual conduct of Tinkham and Hanlen while executing the warrant is irrelevant to our analysis. Instead, qualified immunity in this case turns on whether they reasonably believed that the warrant was supported by probable cause when it was issued and executed. An officer is entitled to rely on a warrant that the officer reasonably believes to be valid. United States v. Humphrey, 140 F.3d 762, 765 (8th Cir. 1998); see also United States v. Leon, 468 U.S. 897, 922-23 (1984) (noting that reliance on a warrant must be objectively reasonable). Conversely, an officer is not entitled to qualified immunity where his reliance on the warrant is not objectively reasonable. We have already noted that material questions of fact existed concerning the objective reasonableness of the warrant application, given the detectives' personal knowledge of facts indicating that probable cause might be lacking. Additionally, the detectives learned information after the warrant issued which also cast doubt on the validity of the warrant. These remaining material issues of fact bearing on whether the officers reasonably believed probable cause to search existed preclude the grant of qualified immunity for Tinkham and Hanlen's conduct in executing the warrant.

Finally, the officers assert that the district court erred by denying summary judgment on the conspiracy claim, arguing that the undisputed facts establish that there was no conspiracy and, alternatively, that they are entitled to qualified immunity from the conspiracy claim. A constitutional conspiracy requires a showing that two or more persons conspired to deprive another of a constitutional right and that an act was done in furtherance of the conspiracy which caused an injury. Marti v. City of Maplewood, Missouri, 57 F.3d 680, 685 (8th Cir. 1995). The district court denied summary judgment on this claim, concluding that there is a material issue of fact over whether a conspiracy existed. We lack jurisdiction in this qualified immunity appeal to address the district court's denial of summary judgment on this basis. See Johnson v. Jones, 515 U.S. 304, 313 (1995) (holding a summary judgment order determining "only a question of 'evidence sufficiency,' i.e. which facts a party may, or may not, be able to prove at trial," is not immediately appealable.)

In a footnote, the district court noted alternatively that the officers were not entitled to qualified immunity on the conspiracy claim, explaining that the same disputed facts that prevented qualified immunity on the first two claims necessarily defeat qualified immunity on this claim as well. We agree. Qualified immunity protects "state actors from personal liability where their actions, though unlawful, are nevertheless objectively reasonable in light of the clearly established law." Rogers, 133 F.3d at 1119. Detective Tinkham, Sergeant Hanlen, and Special Agent Fragoso all worked closely together on this case, and the disputed facts bearing on Hoppe's reliability were within their personal knowledge. These disputed facts call into question the reasonableness of the officers' belief that the warrant was supported by probable cause. Absent an objectively reasonable belief that the warrant was supported by probable cause, the officers' joint efforts to apply for and to execute the warrant would not be entitled to the protection of qualified immunity.

### III.

Accordingly, we affirm the order of the district court denying the motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

8