# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3223

_____

Margaret Vaughn; and    *
Kevin Vaughn Sr.,    *
   *
     Plaintiffs-Appellees,    *
   *
     v.    *
   *
Sutton Ruoff, individually and in her    *    Appeal from the United States
official capacity,    *    District Court for the
   *    Western District of Missouri.
     Defendant-Appellant,    *
   *
Sandra Utz, individually and in her    *
official capacity; and Patricia Marceau,    *
individually and in her official capacity,    *
   *
     Defendants.    *

_____

Submitted: April 13, 2001
Filed: June 22, 2001

_____

Before BOWMAN and FAGG, Circuit Judges, and VIETOR,[1] District Judge.

_____

_____

[1]The Honorable Harold D. Vietor, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

VIETOR, Senior District Judge.

Defendant-appellant Sutton Ruoff and defendants Sandra Utz and Patricia Marceau are social service workers for the Clinton County Division of Family Services in Missouri. Plaintiffs-appellees Margaret and Kevin Vaughn Sr. brought suit against them for violations of several provisions of the United States and Missouri Constitutions based on the claim that defendants compelled Margaret, by coercive means, to submit to tubal ligation sterilization. The district court[2] granted defendants' motion for summary judgment on all claims except the federal and state due process claims against Ruoff. Ruoff appeals, arguing that the district court erred in denying her qualified immunity on the due process claims. We affirm.

## STANDARD OF REVIEW

Qualified immunity protects public officials when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court reviews de novo the denial of a motion for summary judgment based on qualified immunity. *Lyles v. City of Barling*, 181 F.3d 914, 917 (8th Cir. 1999). Review, however, is limited to issues of law, and we will not review the merits of the case or the sufficiency of the evidence. *Id.* at 916-17. A public official may argue "'that [her] actions were objectively reasonable in light of [her] knowledge at the time of the incident,'" *id.* at 917 (quoting *Mueller v. Tinkham*, 162 F.3d 999, 1002 (8th Cir. 1998)), but we will affirm a denial of qualified immunity "if there exists a genuine issue of material fact concerning the [defendant's] knowledge or if the moving party is not entitled to judgment as a matter of law." *Id.*

---

[2]The Honorable Scott O. Wright, United States Senior District Judge for the Western District of Missouri.

-2-

# FACTS

The summary judgment record discloses the following facts, which are either undisputed or viewed in a light most favorable to the Vaughns. Margaret and Kevin Sr. are married and have children. Margaret has been diagnosed as mildly retarded. On August 19, 1993, Margaret gave birth to the couple's first child, a daughter named Leta. Leta was born with various health problems that required ongoing medical care. On October 27, 1993, the Missouri Division of Family Services ("MDFS") took custody of Leta, finding that the Vaughns failed to maintain a sanitary home and could not demonstrate an ability to rear her properly.

After Leta's birth, Ruoff, the social service worker assigned to the Vaughns' case, counseled Margaret on birth control options. Margaret agreed to be and was injected with Depo Provera, a prescription medication contraceptive delivered intravenously. Margaret, however, became pregnant again. On August 19, 1994, Margaret gave birth to the couple's second child, a son named Kevin Jr. On August 26, 1994, MDFS took custody of Kevin Jr., finding unsanitary home conditions and an inability on the part of the Vaughns to rear him properly.

While Margaret was pregnant with Kevin Jr., Ruoff broached the subject of sterilization with the Vaughns. The same day as, but after, Kevin Jr.'s birth, and while Margaret was still in the hospital, Ruoff told Margaret that if she got her "tubes tied, that [she] would have [her] kids back in two to three weeks." Ruoff also told both Margaret and Kevin Sr. that "if [he] or [Margaret] would get sterilized, [their] chances of getting the kids back would be really great." Margaret then agreed to a tubal ligation, and Ruoff scheduled the procedure for October 3, 1994. In September, 1994, Ruoff confirmed the October tubal ligation and arranged to drive Margaret to the hospital. Ruoff later arranged for Margaret to stay at Heartland House Bed & Breakfast the night before the procedure and instructed Kevin Sr. that he could not stay with Margaret that night. On October 3, 1994, Ruoff drove Margaret to the St. Joseph Women's Health

Clinic where the tubal ligation was performed. On December 28, 1994, MDFS informed the Vaughns that it would recommend termination of their parental rights to both Leta and Kevin Jr.

## LEGAL ANALYSIS AND APPLICATION TO FACTS

Ruoff argues that she is entitled to qualified immunity on the Vaughns' due process claims. Qualified immunity analysis initially asks the following two questions: (1) was there a deprivation of a constitutional right, and, if so, (2) was the right clearly established at the time of the deprivation? *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). If either question is answered in the negative, the public official is entitled to qualified immunity. If both questions are answered in the affirmative, a public official can avoid a denial of qualified immunity only if she meets her burden of establishing undisputed and material predicate facts which demonstrate that her actions were reasonable under the circumstances. *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000). If the material predicate facts are undisputed, the reasonableness inquiry is a question of law. *Id.* If there is a genuine dispute over material predicate facts, a public official cannot obtain summary judgment. *Id.*

We begin by determining whether Margaret possessed a protected liberty interest under the Fourteenth Amendment. U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). It is clear that she did because a personal decision relating to procreation or contraception is a protected liberty interest. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 685 (1977). All persons, including the mentally handicapped, possess this liberty interest. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985).

The next issue is whether Ruoff's conduct violated Margaret's due process rights. We hold that it did. Before the State may deprive an individual of a protected liberty interest, the Due Process Clause requires the State to provide certain procedural

-4-

protections. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972) ("'[I]t is fundamental that except in emergency situations . . . due process requires that when a State seeks to terminate [a protected] interest . . ., it must afford "notice and opportunity for hearing appropriate to the nature of the case" before the termination becomes effective.'") (alteration in original) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)).

Ruoff disputes that she deprived Margaret of her protected liberty interest. Ruoff concedes that compelled sterilization implicates due process concerns, but she contends that inducing or coercing a person to submit to sterilization does not. We need not resolve the inducement issue because viewing the facts in a light most favorable to the Vaughns, we conclude that the evidence could support a finding that Ruoff coerced Margaret into submitting to sterilization. A jury could reasonably find that Ruoff's comments about getting the two children back implied that the children would not be returned to the Vaughns if they did not agree to sterilization. A jury could properly conclude from such a finding that Margaret's sterilization decision was not voluntary but rather was coerced, and this, we hold, implicates due process concerns. *See Colorado v. Connelly*, 479 U.S. 157, 522 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.").

It is undisputed that Margaret was not given any procedural protections before the sterilization occurred.[3] Ruoff argues that even without procedural protections, the sterilization was justified. It is true that involuntary sterilization is not always unconstitutional if it is a narrowly tailored means to achieve a compelling government interest. *See Buck v. Bell*, 274 U.S 200, 207-08 (rejecting due process and equal protection challenges to compelled sterilization of mentally handicapped woman). It is

---

[3]Because no procedural protections were given, we need not decide what minimum procedures are required by the Due Process Clause.

also true that the mentally handicapped, depending on their circumstances, may be subjected to various degrees of government intrusion that would be unjustified if directed at other segments of society. *See Cleburne*, 473 U.S. at 442-47; *Buck*, 274 U.S. at 207-08. It does not follow, however, that the State can dispense with procedural protections, coerce an individual into sterilization, and then after the fact argue that it was justified. If it did, it would invite conduct, like that alleged in this case, that is ripe for abuse and error. *See Buck*, 274 U.S. at 206 (noting that Virginia's sterilization law required the state to comply with its " very careful provisions by which the act protects the patients from possible abuse"). Even assuming Missouri had a compelling interest in preventing further births by Margaret, such a compelling interest does not justify dispensing with procedural protections. Sterilization results in the irreversible loss of one of a person's most fundamental rights, a loss that must be preceded by procedural protections.[4] Ruoff's conduct violated Margaret's Due Process Clause right to be free from coerced sterilization without appropriate procedures.

The last issue is whether the unconstitutionality of Ruoff's alleged conduct was clearly established at the time it occurred. We hold that it was. To be clearly established, the right's contours "must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There is no requirement that "the very action in question has previously been held unlawful," *id.*; *see Tlamka v. Serrell*, 244 F.3d 628, 634-35 (8th Cir. 2001), but rather, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. We subscribe to a broad view of the concept of clearly established law, and we look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit. *Tlamka*, 244 F.3d at 634 (quoting *Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir. 1998)). Even in the complete absence of any decisions involving similar facts, a right

---

[4]We express no opinion on what, if any, emergency situations would justify dispensing with pre-sterilization procedural protections. *See Roth*, 408 U.S. at 570 n.7.

can be clearly established if a reasonable public official would have known her conduct was unconstitutional. *See id.* 634-35; *see also Anderson v. Romero*, 72 F.3d 518, 526-27 (7th Cir. 1995) ("A constitutional violation that is so patent that no violator had even attempted to obtain an appellate ruling on it can be regarded as clearly established even in the absence of precedent.").

We have not found any cases with facts similar to those in this case. This does not, however, carry the day for Ruoff. Numerous pre-1994 cases show that minimum procedures regularly precede state compelled sterilizations, and some clearly establish that pre-sterilization procedures are constitutionally required. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942) (Oklahoma); *Buck*, 274 U.S. 200 (Virginia); *N.C. Ass'n for Retarded Children v. North Carolina*, 420 F. Supp. 451, 455-56 (M.D.N.C. 1976) (striking down as unconstitutional a state law provision that required a mental institution director to institute sterilization proceedings if requested by the mentally handicapped person's next of kin or legal guardian); *Relf v. Mathews*, 403 F. Supp. 1235 (D.D.C. 1975); *Wade v. Bethesda Hosp.*, 337 F. Supp. 671, 674 (S.D. Ohio 1971) (denying judicial immunity to probate judge who ordered sterilization of mentally handicapped woman without statutory authorization); *Hudson v. Hudson*, 373 So. 2d 310 (Ala. 1979); *In the Matter of C.D.M.*, 627 P.2d 607 (Alaska 1981); *Mildred G. v. Valerie N.*, 707 P.2d 760 (Cal. 1985); *In the Matter of A.W.*, 637 P.2d 366 (Colo. 1981) (en banc); *Motes v. Hall County Dep't of Family & Children Servs.*, 306 S.E.2d 260, 262 (Ga. 1983) ("We therefore conclude that the seriousness of an individual's interest at stake in a state initiated sterilization proceeding is such that due process requires 'clear and convincing evidence' to authorize the sterilization of an individual."); *In the Matter of P.S.*, 452 N.E.2d 969 (Ind. 1983); *In the Matter of the Guardianship of Matejski*, 419 N.W.2d 576 (Iowa 1988) (en banc); *Holmes v. Powers*, 439 S.W.2d 579 (Ky. Ct. App. 1968); *In re Debra B.*, 495 A.2d 781, 783 (Me. 1985) ("In the exercise of that right [of reproductive autonomy], 'the interests of the parents of a retarded person cannot be presumed to be identical to those of the child.' Thus a judicial determination is necessary to ensure that the child's personal right is

protected.") (quoting *In the Matter of Guardianship of Hayes*, 608 P.2d 635, 640 (Wash. 1980) (en banc)); *Wentzel v. Montgomery Gen. Hosp., Inc.*, 447 A.2d 1244 (Md. 1982); *In the Matter of Moe*, 432 N.E.2d 712 (Mass. 1982); *Smith v. Command*, 204 N.W.2d 140 (Mich. 1925); *In the Matter of the Welfare of Hillstrom*, 363 N.W.2d 871, 876 (Minn. Ct. App. 1985) ("The fundamental right involved must be safeguarded to assure that sterilization is not a subterfuge for convenience and relief from the responsibility of supervision."); *In the Interest of M.K.R.*, 515 S.W.2d 467 (Mo. 1974) (en banc); *State v. Cavitt*, 157 N.W.2d 171 (Neb. 1968); *In re Penny N.*, 414 A.2d 541 (N.H. 1980); *In the Matter of Grady*, 426 A.2d 467 (N.J. 1981); *In re Sterilization of Moore*, 221 S.E.2d 307 (N.C. 1976); *Triplett v. Bd. of Soc. Protection*, 528 P.2d 563 (Or. Ct. App. 1974); *In the Matter of Terwilliger*, 450 A.2d 1376 (Pa. Super. Ct. 1982); *Brode v. Brode*, 298 S.E.2d 443 (S.C. 1982); *Frazier v. Levi*, 440 S.W.2d 393 (Tex. Civ. App. 1969); *In re Marcia R.*, 383 A.2d 630 (Vt. 1978); *In the Matter of Guardianship of Hayes*, 608 P.2d 635 (Wash. 1980) (en banc); *Eberhardy v. Circuit Court for Wood County*, 307 N.W.2d 881 (Wis. 1981). Furthermore, any reasonable social worker—indeed, any reasonable person, social worker or not—would have known that a sterilization is compelled, not voluntary, if it is consented to under the coercive threat of losing one's children, and hence unconstitutional.

The district court did not err in denying qualified immunity to Ruoff on the Vaughns' due process claims. We affirm.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.