# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2985

_____

Marc Hall

*Plaintiff - Appellant*

v.

Ramsey County; Eric Earl Anderson, individually and in his official capacity; Roy Irving, individually and in his official capacity; Melissa Jimenez, individually and in her official capacity; Jodi Leifeld, individually and in her official capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 14, 2015
Filed: September 14, 2015

_____

Before RILEY, Chief Judge, BRIGHT and MURPHY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Marc Hall (Hall) was involuntarily sent to the Ramsey County Detox Center (Detox Center) after driving, while intoxicated, a bicycle into a garage. After his release from the Detox Center, Hall brought a civil rights action pursuant to 42 U.S.C. § 1983 against four members of the staff at the Detox Center and Ramsey County,

Minnesota (collectively, Appellees). Appellees collectively moved for summary judgment of dismissal. The district court[1] granted dismissal of Hall's federal claims on the basis of qualified immunity, finding Hall could not demonstrate any violation of his constitutional rights. Hall appeals. We affirm.

## I. BACKGROUND

On the evening of August 7, 2011, police responded to a call after Hall crashed a bicycle into a garage. At the scene, Hall smelled strongly of alcohol. While declining to pursue charges, the police sent Hall to the Detox Center. Video cameras at the Detox Center captured some of the events that followed.[2]

Around 5:20 a.m. on August 8, 2011, Hall complained of leg pain to Jodi Leifeld (Leifeld), a registered nurse at the Detox Center. Leifeld observed that Hall could walk, but could not put full weight on his leg. Leifeld did not examine Hall's leg and, instead, told Hall to wait until the Detox Center processed the patients set for discharge.

About ten minutes later, Hall called 911 from the Detox Center pay phone and requested medical treatment. The 911 dispatcher phoned the Detox Center and informed a staff member that Hall had called 911. A Detox Center staff member then

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]The parties do not dispute that the Detox Center destroyed some of the video of Hall's involuntary commitment. The magistrate judge issued an adverse inference order for the destruction of the video footage, finding Appellees were on notice of the litigation, nonetheless Appellees destroyed the video footage, and Hall was prejudiced by Appellees' spoliation. See Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013) (describing spoliation standard). We consider the video footage in light of the admitted spoliation.

told Hall he would be placed in seclusion if he called 911 again. The restriction visibly upset Hall. Hall placed another telephone call. Hall claims the call was to a lawyer. Leifeld believed Hall's second call violated the restriction. In light of this belief, Leifeld determined Hall should be sent to seclusion to maintain order in the facility. Leifeld summoned three aides, Eric Earl Anderson (Anderson), Roy Irving (Irving), and Melissa Jimenez (Jimenez) (collectively, Aides) to place Hall in seclusion. The Aides then led Hall toward the seclusion room. Anderson and Irving escorted Hall by his wrists and forearms. Jimenez walked behind Anderson and Irving.

During the escort, Hall began to be uncooperative and, in response, Anderson and Irving pushed Hall against a wall. Anderson proceeded to twist and yank Hall's arm behind his back. Hall heard a popping sound. Irving pinned Hall against the wall. Once the Aides gained control of Hall, they led him to the seclusion room, where Anderson and Irving performed a take-down placing Hall onto a mat. After the Aides left, Hall fell asleep until approximately 7:30 a.m. Hall was released from seclusion at that time and Hall's injuries were assessed.

Hall was taken to the hospital around 11:30 a.m. A doctor ordered x-rays which showed injuries to Hall's elbow, wrist, and leg. The doctor placed Hall's arm in a sling and immobilized his left leg. Evidence in the record indicates the wrist and elbow injuries could have been caused by the twisting of Hall's arm behind his back.

Hall brought this civil rights action pursuant to 42 U.S.C. § 1983 against Anderson, Irving, Jimenez, Leifeld, and Ramsey County for (1) use of excessive force during the escort to seclusion, (2) denial of procedural due process for Hall's placement in seclusion, and (3) denial of medical care in the delayed treatment of Hall's leg. Hall also brought state-law claims for assault, battery, false imprisonment, and negligence. Appellees moved for summary judgment asserting qualified immunity. The district court granted summary judgment on Hall's section 1983

claims, finding Hall failed to demonstrate a violation of a constitutional right. Because the district court granted summary judgment on the claims providing original jurisdiction, the district court declined to exercise supplemental jurisdiction over the state-law claims. The state-law claims were dismissed without prejudice. This appeal follows.

## II. DISCUSSION

"Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Coates v. Powell, 639 F.3d 471, 475 (8th Cir. 2011). We review "de novo a denial of summary judgment on grounds of qualified immunity." Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013). We "accept[ ] as true the facts that the district court specifically found were adequately supported" in addition to the facts that the district court "likely assumed." Lockridge v. Bd. of Trs., of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (citation omitted) (internal quotation marks omitted).

"In [section] 1983 claims, qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012). In reviewing the district court's action on a motion for summary judgment based on qualified immunity, we ask two questions: (1) whether there was a violation of a constitutional right; and (2) whether the right was "clearly established at the time of the" violation. Vaughn v. Ruoff, 253 F.3d 1124, 1128 (8th Cir. 2001). "If either question is answered in the negative, the public official is entitled to qualified immunity." Id. For the reasons stated below, we conclude Appellees' conduct did not violate Hall's constitutional rights and, therefore, we affirm the dismissal on the basis of qualified immunity.

-4-

## A.    Fourteenth Amendment – Excessive Force

Hall argues Appellees violated Hall's constitutional rights by using excessive force during Hall's escort to seclusion.  When evaluating an excessive force claim in the involuntary commitment setting, the constitutional right at issue is an individual's "right to substantive due process arising under the Fourteenth Amendment."  Norris v. Engles, 494 F.3d 634, 637 (8th Cir. 2007); see also Lanman v. Hinson, 529 F.3d 673, 681 (6th Cir. 2008) (holding that when an incident is not covered by a specific provision of the Fourth Amendment "the Fourteenth Amendment Due Process Clause applies to [an] excessive force claim").  The Due Process Clause of the Fourteenth Amendment "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)) (internal quotation marks omitted).

In the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment.  To balance competing interests in a substantive due process analysis, "the question is not simply whether a liberty interest has been infringed but whether the extent or nature of the [infringement] . . . is such as to violate due process."  Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (alteration in original) (citation omitted) (internal quotation marks omitted).  To establish a violation, the "plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  Norris, 494 F.3d at 638 (quoting Slusarchuk v. Hoff, 346 F.3d 1178, 1181-82 (8th Cir. 2003)) (internal quotation marks omitted).

To satisfy the conscience-shocking standard,[3] a government official's conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847-48 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "[C]onduct intended to injure [an individual] in some way unjustifiable by any government interest is . . . most likely to rise to the conscience-shocking level." Id. at 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043. But when the acts of a government official fall "within the middle range . . . something more than negligence but less than intentional conduct"[4] the "totality of the facts in a given case" must be assessed to determine whether the behavior is

---

[3]The Supreme Court recently published its decision in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), holding a pretrial detainee need only show a government official's use of force was objectively unreasonable in a section 1983 case premised upon excessive force. Prior to the publication of Kingsley, the parties did not dispute the requisite state of mind required for Hall's excessive force claim. See, e.g., Werner v. U.S. Dep't of Interior, 581 F.2d 168, 171 (8th Cir. 1978) (holding arguments not made "to the district court . . . will not be considered by this court when raised for the first time on appeal"). Further, any constitutional rights afforded to Hall under Kingsley were not "clearly established" at the time of Hall's detention. See Vaughn, 253 F.3d at 1128 (holding a government official is entitled to qualified immunity if a constitutional right is not "clearly established at the time of the" alleged violation). Therefore, Kingsley does not effect the standard against which we evaluate the Aides conduct in the qualified immunity analysis.

[4]Hall relies on the "deliberate indifference that shocks the conscience" standard. We have held that the middle range of conduct that *could* shock the conscience "in some contexts" includes egregious cases of "deliberate indifference, recklessness, or gross negligence." Bonebrake v. Norris, 417 F.3d 938, 942 (8th Cir. 2005) (internal quotation marks omitted). But we have never applied the "deliberate indifference that shocks the conscience" standard in the context of an excessive force claim brought by an involuntarily committed individual. See Norris v. Engles, 494 F.3d 634, 638-39 (8th Cir. 2007) (articulating the standard above for a substantive due process claim brought by an individual placed, involuntarily, in protective custody). Even if we assume, *arguendo*, it is proper to analyze "deliberate indifference that shocks the conscience" in this context, Hall's claim would also fail.

conscience shocking.  Id. at 849-50, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (citations omitted) (internal quotation marks omitted).  Determining whether conduct is conscience shocking "is a question of degree."  Moran, 296 F.3d at 647 (citation omitted) (internal quotation marks omitted).

> In general, substantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Id. (alteration in original) (citation omitted) (internal quotation marks omitted).

The issue of whether the Appellees' conduct was conscience shocking is a close one.  But ultimately, Hall's resistance to the Aides, shown by the video footage, makes the high standard inapplicable.  See, e.g., Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000) (relying on "objective" video footage to analyze the reasonableness of a police officer's actions in an excessive force case).  Video footage shows Hall resisted his escort just prior to the Aides' use of force.  To get Hall under control, the Aides pressed Hall against a wall and twisted his arm behind his back.  Once under control, the Aides brought Hall to the seclusion room and took him down onto a mat.

The conduct of the Aides and Leifeld shows an error in judgment and carelessness because Hall was likely injured by the Aides' actions.  But this is a plain case of "unwise excess of zeal" that, while disturbing, does not literally shock the conscience such that the behavior meets the heavy burden of violating substantive due process.  See Moran, 296 F.3d at 647 (citation omitted) (internal quotation marks omitted).  Thus, Hall failed to show a constitutional violation as required to recover for the use of excessive force.

We would be remiss, however, if we failed to acknowledge that government officials have "an unquestioned duty to provide reasonable safety for all residents and

-7-

personnel within [an] institution" where people are involuntarily committed. Youngberg v. Romeo, 457 U.S. 307, 324, 102 S. Ct. 2452, 2462, 73 L. Ed. 2d 28 (1982). Here, government officials failed to provide reasonable safety to Hall. Instead, Hall's elbow and wrist were likely injured during the escort to seclusion. The behavior on the part of the Aides, and Leifeld's supervision of such conduct, is unacceptable. Yet, this is not the egregious case that rises to the level of violating substantive due process under the Fourteenth Amendment. Instead, state-law claims still exist that may be a more appropriate remedy for the harm caused to Hall.

**B.**     **Fourteenth Amendment – Procedural Due Process**

Hall next argues Appellees violated his Fourteenth Amendment procedural due process right when placing Hall into seclusion. We disagree.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam). "Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." Id.

In this case, Hall asserts the Appellees unconstitutionally placed Hall in seclusion as a form of punishment, in violation of his constitutionally protected liberty interest. To support his position, Hall cites to the standard applicable to "conditions of confinement" claims by pretrial detainees. There, "[t]he proper inquiry is whether . . . conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). But "not every disability imposed during . . . detention amounts to 'punishment' in the constitutional sense." Id. Instead, "if a particular condition or restriction of . . . detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " Id.

We have not previously decided whether the "conditions of confinement" standard for pretrial detainees applies to involuntarily committed individuals. We now apply that standard. See, e.g., Doe v. Gaughan, 808 F.2d 871, 879-80 n.9 (1st Cir. 1986) (applying the "conditions of confinement" standard to "the confinement of dangerously mentally ill men" at a "strict security" facility); Lynch v. Baxley, 744 F.2d 1452, 1461 (11th Cir. 1984) (same for "emergency detainees" placed in jail while "awaiting civil commitment proceedings"). Thus, we examine whether the record supports Hall's claim that Appellees placed Hall in seclusion as "punishment" and not to serve a legitimate governmental objective.

We have held "[t]he Government has legitimate interests that stem from its need to manage the facility in which the individual is detained." Smith, 87 F.3d at 268. Further, in Whitfield v. Dicker, we held placing a pretrial detainee in segregation prior to a hearing did not violate his Fourteenth Amendment right to procedural due process because the purpose of the segregation was "for institutional security"—a legitimate governmental objective. 41 F. App'x 6, 7 (8th Cir. 2002) (per curiam) (unpublished).

Here, the video footage shows Hall was engaging in disruptive behavior with regard to his use of the telephone. Hall was told not to call 911 and the restriction visibly angered Hall. Hall proceeded to make another telephone call. Hall's behavior occurred around the time other patients were being discharged. Sworn statements by Leifeld state Hall was placed in seclusion "because he was uncooperative and unable to follow directions." Further, Hall's seclusion lasted for less than two hours. Based upon the record, the Detox Center had a legitimate governmental interest in maintaining order and efficiently managing the facility. Placement of Hall in seclusion for a short period of time was a reasonable means of meeting the objective. Therefore, Hall failed to show his seclusion was a form of "punishment" violating his constitutional rights under the Due Process Clause of the Fourteenth Amendment.

## C. Fourteenth Amendment – Denial of Medical Care

Hall finally argues the Appellees unconstitutionally denied Hall medical care when Leifeld failed to immediately send Hall to the hospital for his injured leg. Again, we disagree.

Hall's right to medical care arises under the Due Process Clause of the Fourteenth Amendment. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). To analyze denial of medical care claims, however, "we apply the deliberate-indifference standard that governs claims brought . . . under the Eighth Amendment." Id. Whether an official was deliberately indifferent requires "both an objective and a subjective analysis." Scott v. Benson, 742 F.3d 335, 339-40 (8th Cir. 2014). "Under the objective prong, [Hall] must establish that he suffered from an objectively serious medical need." Jackson, 756 F.3d at 1065. "Under the subjective prong, [Hall] must show that an official actually knew of but deliberately disregarded his serious medical need." Id. (citation omitted) (internal quotation marks omitted).

"We have defined a serious medical need as one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (citation omitted) (internal quotation marks omitted). According to the video footage and other evidence, Hall did not appear to need medical attention. Throughout the video footage, Hall walks without a noticeable limp and does not appear to favor either leg. There is also no evidence in the record showing harm to Hall by the delay. Thus, Hall failed to establish a due process violation.[5]

_____

[5]Hall also argued Ramsey County violated his constitutional rights by maintaining an unconstitutional policy or practice. But the general rule in this Circuit is that "[w]ithout a constitutional violation . . . there can be no [section] 1983 . . . municipal liability." Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir.

## III. CONCLUSION

Accordingly, for the reasons set forth above, we affirm the district court's determination that Appellees were entitled to qualified immunity.[6] Hall failed to show a violation of his procedural or substantive due process rights under the Fourteenth Amendment.

_____

2007); see also Roach v. City of Fredericktown, 882 F.2d 294, 298 (8th Cir. 1989) (noting that this "Court recognized that in order for municipal liability to attach . . . there must first be an underlying violation of the plaintiff's constitutional rights by a municipal employee"). Because Hall failed to establish a constitutional violation, Hall's municipal liability claim against Ramsey County also fails.

[6]Hall filed a motion to strike portions of Appellee's Appendix arguing the documents were not submitted to the district court as part of the record at summary judgment. Because the portions of Appellee's Appendix played no part in our analysis, we deny Hall's motion as moot.