*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1817**

Marc Hall,
Appellant,

vs.

Ramsey County, et al.,
Respondents.

**Filed July 11, 2016
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CV-14-6262

Stephen C. Fiebiger, Stephen C. Fiebiger Law Office, Chtd., Burnsville, Minnesota (for appellant)

John Choi, Ramsey County Attorney, Robert B. Roche, Assistant County Attorney, St. Paul, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant sued respondents Ramsey County and four county employees, alleging assault, battery, false imprisonment, and negligence. Appellant claims that he was injured while he was being escorted and placed in seclusion during his stay at the county detox

center. After determining that official immunity applies, the district court granted summary judgment in favor of the county and its employees. Appellant argues that the district court erred by granting summary judgment because genuine issues of material fact exist on all his claims. Because there are no genuine issues of material fact and official immunity applies, we affirm.

## FACTS

On the evening of August 7, 2011, an Eagan police officer responded to a call that appellant Marc Hall had crashed a bicycle into a garage. The officer smelled "a strong odor of a consumed alcoholic beverage" on Hall's breath. "Due to his obvious signs of intoxication, his refusal to give [a preliminary breath test], his poor attitude, and because he appeared to not know where he was riding around," the officer took Hall to Ramsey County's detox center. Hall went to bed and fell asleep shortly after he was admitted. Video cameras at the detox center captured some of the events that followed, and the parties testified at depositions, which were admitted into evidence.

Early in the morning on August 8, Hall complained of knee pain to one of the registered nurses at the detox center. The nurse observed that Hall could walk, but that he could not put his full weight on his leg. The nurse did not examine Hall's leg at this time and told him to wait until she was done processing the patients set to discharge that morning. About 10 minutes later, Hall called 911 from the detox center phone and requested medical treatment. The 911 dispatcher called the detox center and informed staff about the call. Hall was told by staff that he would be placed in seclusion if he called 911 again, which visibly upset him. Hall then placed another telephone call, claiming that he

2

called an attorney. The nurse believed that Hall was calling 911 again and ordered Hall to be sent to seclusion. The nurse testified that she made this decision "[b]ecause he was uncooperative and unable to follow directions." Three detox center aides escorted Hall to the seclusion room.

During the escort, one of the aides lost his grip on Hall. The aides testified that this occurred because Hall started resisting as soon as they turned the corner towards the seclusion room. Hall claims that he "wasn't trying to do anything." To regain control, the aides brought Hall to the wall. While he was pinned at the wall by the shoulder of one aide, the aide who had lost his grip put Hall's right arm behind his back. Hall testified that when this happened he "heard [his] arm popping" and that it "hurt unbelievably bad." Once the aides regained control, they continued to the seclusion room. Hall's right arm was kept pulled behind his back the remainder of the way.

In the seclusion room, the aides took Hall down and placed him face down onto a mat on the floor. After the aides left, Hall kicked at the door and was banging both of his elbows against the window. Hall eventually fell asleep. Hall was released from seclusion about two hours later, and his injuries were assessed at that time. Hall was then taken to a hospital. A doctor ordered x-rays, which showed injuries to Hall's elbow, wrist, and leg. The doctor testified that the wrist and elbow injuries could have been caused by the pulling of Hall's arm behind his back.

Hall filed a suit in federal district court against respondents Ramsey County, the nurse, Jodi Leifield, and the three aides, Eric Anderson, Roy Irving, and Melissa Jimenez, alleging claims under 42 U.S.C. § 1983 for constitutional violations and state tort claims.

3

*Hall v. Ramsey Cty.*, No. CIV. 12-1915 DSD/LIB, 2014 WL 4055368 (D. Minn. Aug. 14, 2014), *aff'd*, 801 F.3d 912 (8th Cir. 2015).  The federal district court granted summary judgment on Hall's federal claims and dismissed his state claims without prejudice.  *Id.*  Hall then filed a suit in state district court against respondents alleging assault, battery, false imprisonment, and negligence.  Respondents moved for summary judgment.  After a hearing on respondents' motion, the district court determined that official immunity applies and granted summary judgment, dismissing Hall's claims.

Hall appeals.

### D E C I S I O N

On appeal from summary judgment, we review de novo and determine "whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment."  *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010).  "We view the evidence in the light most favorable to the nonmoving party . . . and resolve all doubts and inferences against the moving part[y]."  *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 661 (Minn. 2015).  A genuine issue of material fact exists if reasonable persons might draw different conclusions based on the evidence presented.  *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

## I.     Respondents are protected under the doctrine of official immunity.

The doctrine of official immunity protects public officials from liability for their performance of discretionary duties, unless they engage in willful or malicious conduct.  *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014).  "Official immunity is intended to enable public employees to perform their duties effectively, without fear of

4

personal liability that might inhibit the exercise of their independent judgment." *Id*. It applies to acts that involve "an exercise of independent judgment, even at the operational level." *Id.* (quotation omitted). "[W]hether official immunity applies turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial and, if ministerial, whether any ministerial duties were violated; and (3) if discretionary, whether the conduct was willful or malicious." *Id.* The application of immunity is a question of law that we review de novo. *Id.*

### A. Conduct at issue

The first step in deciding whether official immunity applies is determining the conduct at issue. *See id*. This court has previously stated that it is important to identify "the precise alleged conduct giving rise to the plaintiff's claims at the outset of the immunities analysis. What governmental *conduct* the plaintiff is challenging is determinative of whether an immunity applies." *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 315 (Minn. App. 1997), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998).

Both parties assert that there are two incidents at issue. They agree that the first incident at issue is the nurse's decision to place Hall in seclusion. But the parties do not agree on the second incident. Hall asserts that the second incident at issue is the aides' execution of the nurse's order to escort Hall to the seclusion room, while respondents assert that the second incident at issue is the use of force by the aides while placing Hall in the seclusion room. We agree with respondents. The allegations in the complaint include: (1) Hall's placement and length of stay in the seclusion room was unwarranted; (2) as he

5

was escorted to the seclusion room, his "right arm was violently twisted behind his back" while he was "simultaneously [being] push[ed] against the wall"; and (3) when he was placed in the room he was "violently pushed . . . face first onto the floor" and held there by the aides' knees. *See Gleason*, 563 N.W.2d at 315 (looking to the allegations in the complaint that give rise to the plaintiff's claims when determining the conduct at issue). Based on these allegations, we conclude that the precise conduct at issue is the nurse's decision to place Hall in seclusion and the aides' use of force while placing Hall in the seclusion room.

### B.     *Discretionary or ministerial duty*

The next step is determining whether the conduct at issue is discretionary or ministerial. *See Vassallo*, 842 N.W.2d at 462.

> When determining whether conduct is discretionary or ministerial, we focus on the nature of the act. A discretionary duty involves individual professional judgment that necessarily reflects the professional goal and factors of a situation. By contrast, a ministerial duty is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.

*Id.* (quotations omitted).

In compliance with Minn. R. 9530.6535 (2015), the detox center has a "written plan that establishes the protective procedures that program staff must follow when a client's behavior threatens the safety of the client or others." Hall argues that the nurse's "decision to order [him] to seclusion was ministerial because the circumstances permitting use of seclusion were specifically enumerated in the [detox center procedures] and state administrative regulations." He also argues that "[t]he acts of the aides following [the

nurse's] order to take [him] to seclusion were ministerial" because "[t]hey did not exercise discretion in initiating the escort, but attempted to implement the orders of the supervising nurse." We disagree.

We conclude that the nurse's decision to place Hall in seclusion was a discretionary act. The detox center procedures list "criteria" for placing clients in locked seclusion, but do not require it. A nurse must decide whether to place a client in seclusion by weighing several factors, including the effect of a client's behavior on the safety of other clients and staff, if a client is in imminent danger of causing harm to himself or to others, the client's current medical condition, and if less restrictive alternatives would be effective or have already been used. Therefore, placing a client in seclusion is not "absolute, certain and imperative," as a nurse has to exercise a significant amount of judgment and discretion when deciding whether to do so. *See Vassallo*, 842 N.W.2d at 462.

We also conclude that that the aides' use of force while they were escorting Hall to and placing him in the seclusion room was a discretionary act. The detox center procedures contain a list of "approved therapeutic holds" and indicate which holds are appropriate based on a client's behavior and medical condition. The procedures do not require particular holds to be used in certain circumstances and do not indicate what should be done if staff lose control of a client or how to position a client into the seclusion room. Staff must decide which holds and how much force to use by weighing several factors, including whether a client is a threat to other clients or staff, the client's current medical condition, and if less restrictive alternatives would be effective or have already been used. Therefore, the use of force when escorting and placing a client into the seclusion room is

7

not "absolute, certain and imperative," as staff have to exercise a significant amount of judgment and discretion in deciding how much force to use. *See id.*

### C.     *Willful or malicious conduct*

The last step of the official immunity analysis is to determine whether the discretionary conduct was willful or malicious. *See id.* at 465.

> Malice is not negligence. It is the intentional doing of a wrongful act without legal justification or excuse, or otherwise stated, the willful violation of known right. The exception to immunity for malicious acts allows liability only when an official intentionally commits an act that he or she than has reason to believe is prohibited.

*Id.*

Hall argues that the nurse's actions were malicious because there was no basis for his seclusion under the detox center procedures, there was no reason for his continued seclusion, and the nurse did not assess the condition of his leg when he complained, contrary to the detox center procedures. Hall also argues that the aides' actions were malicious because they "subjected [him] to abuse in violation of state statutes and [the detox center procedures]." We disagree.

We conclude that the nurse's actions were not willful or malicious because they were justified under the detox center procedures. First, the procedures allow seclusion if a client is "[h]ostile [or] aggressive[ly] acting out." Right before he was placed in seclusion, Hall made aggressive gestures and raised his voice toward staff. Second, the procedures allow for "a violent client" who has fallen asleep to be kept in seclusion while they are sleeping as long as staff perform checks for safety every 15 minutes and nurses assess the

8

continued need for seclusion hourly. From the video, Hall appears to have been asleep for a majority of the time he was in seclusion, and documentation shows that staff and the nurse performed the required safety checks and assessments. Finally, the procedures require that "[p]atients must be evaluated by the nurse on duty as being in no *immediate* need of medical attention before being secluded." (Emphasis added.) Hall had frequent interactions with staff, including the nurse, from the time he woke up until he was placed in seclusion. Based on these interactions, the nurse testified that she was able to determine that Hall "was not showing any signs of distress." Because "evaluated" is not defined in the procedures, we conclude that the nurse's interactions with Hall satisfy an evaluation of his immediate need for medical attention.

Although the force used by the aides in the video is concerning, we conclude that their actions do not rise to the level of willful and malicious conduct. *See id.* ("Malice is not negligence."). The video confirms that, whether or not Hall was resisting, the aides lost control of him as they turned the corner to the seclusion room. Further, there was deposition testimony that staff are trained to bring a client to a wall when they lose control and to take a client down to the mat upon entering the seclusion room because it is a safer technique. Therefore, the techniques used by the aides were not prohibited or, at a minimum, the aides did not know these techniques were prohibited. *See id.* (holding exception to immunity for malicious acts allows liability only in cases where a public official intentionally commits an act that the official has reason to believe is prohibited).

In sum, we conclude that official immunity applies to the detox center employees because the conduct at issue was discretionary and not willful or malicious. The district

9

court properly granted summary judgment with respect to Hall's claims against the employees.

**II.     District court properly granted vicarious official immunity.**

When applicable, "[v]icarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity." *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 297 (Minn. App. 2001), *review denied* (Minn. Feb. 28, 2002); *see Fedke v. City of Chaska*, 685 N.W.2d 725, 731 (Minn. App. 2004) (stating that "vicarious liability has to apply in situations when, if vicarious immunity to the employer were not granted, the purpose of official immunity would be defeated"), *review denied* (Minn. Nov. 23, 2004). Because official immunity applies to the detox center employees, and we see no reason not to apply it here, Ramsey County is protected by vicarious official immunity, and the district court properly granted summary judgment with respect to Hall's claims against the county.

**Affirmed.**